## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

**CANDACE SLAVEN, on behalf of herself and all others similarly situated,**

          **Plaintiffs,**

**v.**

**CHURCH STREET RESTAURANT ASSOCIATES OF SARATOGA, LLC D/B/A 15 CHURCH, ROBERT PEZULICH & THOMAS BURKE II**

          **Defendants**.

_____

**CLASS ACTION COMPLAINT**

1:25-cv-227 (DNH/DJS)

**JURY TRIAL DEMANDED**

Plaintiff CANDACE SLAVEN ("Slaven" or "Plaintiff"), individually and on behalf of all others similarly situated, by their attorneys, upon personal knowledge as to herself and upon information and belief as to other matters, allege as follows:

### INTRODUCTION

1.      This is a class and collective action lawsuit seeking to recover misappropriated tips, unlawful tip credits, overtime compensation, and statutorily required liquidated damages on behalf of Plaintiff and all similarly situated co-workers who are currently, or were formerly, employed as tipped, front of the house service staff members such as servers, bartenders, and bussers at 15 Church, a restaurant operated by the Defendants CHURCH STREET RESTAURANT ASSOCIATES OF SARATOGA, LLC, THOMAS BURKE, and ROBERT PEZULICH, and other affiliated individuals.

2.      Defendants Church Street Restaurant Associates of Saratoga, LLC d/b/a 15 Church ("15 Church"), Thomas Burke II ("Burke") and Robert Pezulich ("Robert," and together with 15

Church, "Defendants") are the owners and operators of 15 Church, a restaurant located at 15 Church Street, Saratoga Springs, New York.

3.      Founded by Defendant Burke and former co-owner Paul McCullough, 15 Church opened for business in 2014.

4.      15 Church has an indoor seating capacity of approximately 50-60 diners. In the summer months, the restaurant features an additional outdoor patio seating area which approximately triples the seating capacity.

5.      In a June 10, 2015 article published in the Times Union which reported on the opening of the restaurant's newly constructed patio, it was reported that the new patio "essentially triples the capacity at 15 Church. Inside can seat a little more than 50 at tables and a small bar; there will be seating for almost 50 at patio tables and room for an equal number at the patio bar and high-top tables."

6.      The June 10, 2015 Times Union article went on to report that, with the addition of this large patio, "[t]he staff has doubled, though the two dozen hired for the patio kitchen and service staff will mostly be seasonal employees."

7.      In the busier summer months, 15 Church typically employs at least 35-40 front of the house tipped employees, including servers, bartenders, bussers, and hosts.

8.      Excluding the busy summer season, 15 Church typically employs at least 15-20 front of the house tipped employees, including servers, bartenders, bussers, and hosts.

9.      The Defendants utilize a website, 15churchrestaurant.com, in connection with the operation of 15 Church.

10.      According to the Defendants' website, the restaurant's dinner menu contains internationally sourced selections.

11.     For example, while the dinner menu is updated from time to time, a recently listed menu includes items at a price range from $39 for its least expensive dinner item to $175 for its most expensive dinner item: a Kobe beef filet mignon which the menu claims is sourced from cattle raised in Japan's Hyogo Prefecture. The dinner menu also includes sea bass sourced from the Falkland Islands.

12.     The wine menu at 15 Church lists nearly 80 selections from famous wine regions in the United States and across the globe, including California, Oregon, Spain, France, Italy, New Zealand, South Africa, and Australia. Some wine bottles are priced at over $1,000 each.

13.     Upon information and belief, the restaurant earns millions each year in gross sales revenue.

14.     As set forth herein, despite millions of dollars in gross revenue, the Defendants engaged in a systematic and unlawful scheme to retain a portion of their employees' tips in violation of state and federal law.

15.     To wit, the Defendants, *inter alia*, required their front of the house food service workers to collectively pool their tips and distribute a portion the pooled tips to management and other tip ineligible 15 Church employees.

16.     As a result of this scheme to divert compensation away from the Plaintiff as well as other unlawful conduct, Defendants violated numerous provisions of the New York Labor Law ("NYLL"), the additional regulations promulgated by the New York Department of Labor known as Hospitality Industry Wage Order, N.Y. Comp. Codes R. & Regs. tit. 12 §§ 146, et seq., (the "Hospitality Order") and the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq*. ("FLSA").

17.     The NYLL, Hospitality Order, and the FLSA each apply to the Defendants and provide a clear and comprehensive legal framework for the distribution of tips, the employees who

are entitled to a share of tips when they are pooled, and the wage notices and statements required to be distributed to employees during their employment.

18.    Specifically, Defendants: (1) unlawfully administered a tip pool in which they collected all front of the house server and bartender tips and re-distributed a portion of these tips to ineligible employees who are not food service workers, including to Defendants' own management (in the amount of 2% of all restaurant food and beverage sales), kitchen expeditors (6% of the tip pool), administrative staff members who only answered phones, kitchen staff and dishwashers, and cleaning staff; (2) deducted compensation from waitstaff and bartenders tips for mistaken orders and cash shortages; (3) unlawfully claimed a tip credit against the regular minimum wage and overtime rates of compensation which Plaintiff and similarly situated food service staff were entitled to; (4) unlawfully failed to pay the legally required overtime rate to Plaintiff and similarly situated staff members; and (5) failed to provide legally compliant wage notices and statements prior to the commencement of employment and on each payment of wages on employee pay stubs, which resulted in the underpayment of wages for Plaintiff and similarly situated food service workers.

19.    Plaintiff brings these claims on behalf of herself and all similarly situated current and former food service worker employees of Defendants.

**PARTIES**

Plaintiff

20.    Plaintiff Candace Slaven ("Slaven" or "Plaintiff") is a resident of Malta, New York.

21.    From approximately October 20, 2023, to September 17, 2024, Plaintiff Slaven worked primarily as a member of the wait staff (a/k/a "server") at 15 Church. Slaven also occasionally worked shifts as a bartender and hostess.

4

22.     When working as a member of the wait staff at 15 Church, Slaven and all other servers' duties included, but were not limited to: properly setting tables up prior to opening for service, checking cleanliness of linens, silver and glass ware, checking and stocking server stations, greeting and communicating with customers, recommending food and drink selections, taking and entering food and drink orders from customers into the restaurant point of sale system, communicating and coordinating with 15 Church kitchen and bar staff, serving food and beverages to customers, addressing mistakes or dissatisfied customers, clearing away used dishes, silver, and glasses, processing customer payments, performing side work, and assisting in closing the restaurant each night.

23.     In her work as a server, Slaven was assisted by bussing staff employees who also directly provided service to 15 Church's customers.

24.     Bussing staff employees at 15 Church are also tip eligible food service workers and received a portion of tips from the tip pool.

25.     Bussers' duties included, but were not limited to, the following: assist in setting up dining room, stocking server stations, cleaning all front of the house restaurant areas, providing customers with water and bread, clearing dishes, silverware, and glass ware, replacing plates, glass, and silverware after completion of courses, clearing tables and re-setting tables for new customers, performing side work, and assisting in closing the restaurant each night.

26.     While working as a server at 15 Church, Plaintiff and all other servers on duty regularly received tips from customers.

27.     When working as a bartender at 15 Church, Slaven and all other bartenders' duties included, but were not limited to: cleaning and setting up the bar for dinner service, preparing and stocking items like sliced fruit, cherries, and olives used for making drinks, properly stocking the

bar's cold wine and beer selections, identifying low or empty bottles of alcohol for re-stocking, serving food and drinks, including mixing alcoholic and non-alcoholic custom drinks, both directly for customers sitting at the bar and indirectly for customers sitting at tables who ordered drinks through their servers, communicating with customers and other 15 Church staff regarding service, processing customer payments, performing required side work, and assisting in closing the bar and restaurant each night.

28.     In her work as a bartender, Slaven was assisted by bussers or barbacks to provide customers with service.

29.     While working as a bartender at 15 Church, Slaven and all other bartenders on duty regularly and customarily received tips from customers.

30.     For the portion of her employment at 15 Church which occurred in 2023, Slaven was paid at a rate of $9.45/hour when working as a server or bartender.

31.     Upon information and belief, all other tip eligible front of the house staff like servers, bartenders, and bussers were also paid $9.45/hour in 2023.

32.     For 2023, Defendants utilized a tip credit of $4.75/hour toward the applicable minimum wage rate and overtime rate of compensation when paying Plaintiff and all other similarly situated tipped employees.

33.     For the portion of her employment at 15 Church which occurred in 2024, Slaven was paid a regular rate of $10.00/hour and an overtime rate of $15.00/hour when working as a server or bartender.

34.     Upon information and belief, all other tip eligible front of the house staff like servers, bartenders, and bussers were also paid a regular rate of $10.00/hour and an overtime rate of $15.00/hour.

35.     For 2024, Defendants utilized a tip credit of $5.00/hour toward the applicable regular minimum wage rate and overtime rate when paying Plaintiff Slaven and all other similarly situated tipped employees.

36.     Slaven was an employee of Defendants as that term is defined in the FLSA and the NYLL.

37.     Under the FLSA, Slaven and all other similarly situated employees were "tipped employees" engaged in occupations in which they customarily and regularly received more than $30 a month in tips.

38.     Slaven has, pursuant to 29 U.S.C. §216(b), consented in writing to be a party to the FLSA claims in this action. See Exhibit "A".

Defendants

39.     Defendant Church Street Restaurant Associates of Saratoga, LLC d/b/a 15 Church ("15 Church"), is a New York limited liability company with a principal business address located at 15 Church Street, Saratoga Springs, New York.

40.     Upon information and belief, 15 Church has an annual gross volume of sales in excess of $500,000 and, at all applicable times, is a business enterprise engaged in interstate commerce.

41.     15 Church prepares and offers food and beverage to the public for on-premises human consumption.

42.     15 Church is a covered "restaurant" as that term is defined by the Hospitality Order and is required to comply with its provisions. 12 NYCRR 146-3.1 [b].

43.     Paychecks were issued to Plaintiff and all other similarly situated staff from the business checking account of Defendant Church Street Restaurant Associates of Saratoga, LLC.

44.    Defendant Robert Pezulich ("Pezulich") is a New York resident and serves as the front of the house manager for Defendants' operations at 15 Church.

45.    As the front of the house manager, Defendant Pezulich has the power to hire, discipline, and fire employees of 15 Church, control employees work schedules and employment conditions, determine the rate and method of payment of such employees, and maintain records relating to employee compensation.

46.    Defendant Pezulich oversaw and enforced 15 Church tip pool distributions and tip pool recordkeeping for Defendants.

47.    Defendant Thomas Burke ("Burke") is a New York resident and the owner of 15 Church. Pezulich and Burke are collectively referred to herein as the "Individual Defendants."

48.    Defendant Burke is an experienced restaurant business operator and commercial real estate developer.

49.    According to articles published in the Albany Business Review, Burke is the Chief Executive Officer of the Burke Companies, which owns, operates, or controls the real estate of 35 Dunkin Donuts locations in the Capital Region.

50.    Through his involvement in these Dunkin Donuts franchises and 15 Church, Defendant Burke has been in the restaurant business for decades.

51.    Defendant Burke exercised significant authority over operational decisions at 15 Church.

52.    Defendant Burke had the power to hire, fire and discipline 15 Church employees, manage company records, and control employment conditions by directing employee work.

53.    Defendant Burke hired Defendant Pezulich to serve as manager of 15 Church.

54.     Along with his former co-owner Paul McCulloch, Defendant Burke made the decision to hire 15 Church's chef, Michael Mastrantuono.

55.     According to Robert Byrne, a former server at 15 Church, whenever Defendant Burke entered the building, the restaurant's staff were trained to collectively stop what they were doing and turn their attention to the needs of Burke.

56.     On the occasions he visited the restaurant, Defendant Burke directed 15 Church employees in the performance of their duties.

57.     In one instance, Byrne witnessed Defendant Burke reprimand and order two employees, Arnole and Alex, to immediately clean certain areas of the restaurant. These two employees complied with Burke's orders.

58.     In his visits, Defendant Burke ordered bartending staff to make drinks for him and the kitchen staff to send food to certain tables and prepare takeout food orders for Burke and his family members.

59.     Defendant Burke also played an active role in the operational compliance at 15 Church and the resolution of operational emergencies, which directly affected Plaintiff and other tipped staff members' compensation.

60.     Defendant Burke is listed as the principal of 15 Church by the New York State Liquor Authority ("SLA") records database.

61.     In May 2024, Defendant Burke made the decision to cancel an annual Kentucky Derby party held at 15 Church, an event which initially garnered over 300 reservations for a $150/person special menu, because the 15 Church liquor license had expired and Defendants were unable to renew the license prior to the date of the party.

62.    At the time the license expired, according to a May 4th, 2024 article published in the Times Union, it was Burke who spearheaded efforts to renew the 15 Church liquor license and further, it was Burke who was advised by the SLA that 15 Church could not offer any alcoholic beverages for this event. Burke even offered to visit the SLA offices in person in an attempt to renew the license before the party.

63.    Renewal and maintenance of the 15 Church liquor license, which Burke exercised control and decision-making power over, was a materially consequential event for 15 Church's operations as well as Plaintiff and other similarly situated employees' income from gratuities.

64.    To wit, the May 4th 2024 Times Union article stated: "It's a disaster. We're down to 40 reservations," Robert Pezulich, director of front-of-house operations for 15 Church, said Saturday afternoon. The restaurant was open for meals, but no alcohol could be sold, served or brought in, he said. Dozens of staff members scheduled to work the weekend are being affected by reduced or eliminated hours, he said, and tipped employees would see *income from gratuities sharply diminished*." (emphasis added).

65.    Under a photo of Defendant Burke pictured on the 15 Church patio, the May 4th Times Union article reported that Burke told the Times Union that his staff will lose thousands of dollars of expected income after he was forced to cancel the annual Kentucky Derby party.

66.    In another article published on May 6, 2024 by the Times Union, Burke estimated 15 Church's losses at $60,000 - $70,000 stemming from the cancelled, one day Kentucky Derby event.

67.    Burke also participated in decisions to add menu features. For example, in an article published October 22, 2024 in the Daily Gazette, Defendant Burke commented on the recent

launch of a tasting menu, stating, "[i]t's something we've been wanting to do for a while now and we can't do it in the summer because it's just too darn busy."

68.     As set forth herein, the Individual Defendants maintained control over, oversaw, and directed the operation of 15 Church, including Defendants' unlawful employment practices, during the relevant period.

69.     The Individual Defendants jointly employed Plaintiffs and similarly situated employees at all relevant times and were each covered employers within the meaning of the FLSA and NYLL.

70.     Defendants were and remain part of a single integrated enterprise that jointly employed Plaintiffs and similarly situated employees for a common business purpose.

## JURISDICTION AND VENUE

71.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under FLSA, 29 U.S.C. §§ 201, et seq. This Court has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. §1367, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

72.     Each Defendant is subject to personal jurisdiction in New York as they are either organized or domiciled in New York and each specifically intended to commit the illegal acts set forth herein in New York.

73.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendants conduct business in this District, because a substantial portion of the wage violations giving rise to Plaintiff's claims occurred in this District, and because the acts and/or omissions giving rise to the claims herein allegedly took place in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

11

<u>Illegal Scheme to Divert Tips to Ineligible Employees and Management</u>

74.    While Slaven was employed at 15 Church, Defendants enforced a policy which required servers and bartenders to contribute the tips they earned on a shift to a common fund known as a tip pool.

75.    Under applicable New York law, if certain conditions are met, Defendants and other employers in the hospitality industry are permitted to require their food service workers to participate in a tip pool and set the percentages to be distributed to each occupation by the tip pool. *See* 12 NYCRR § 146-2.16 (b).

76.    Importantly, under applicable New York law, only "food service workers" were entitled to receive distributions from the tip pool. *Id*.

77.    Under the Hospitality Order, a "food service worker" is any employee who is primarily engaged in the serving of food or beverages to guests, patrons, or customers in the hospitality industry, including, but not limited to, wait staff, bartenders, captains and bussing personnel. *See* 12 NYCRR § 146-3.4 (a).

78.    Furthermore, under the Hospitality Order, Defendants were required to establish, maintain, and preserve, for at least six years, records related to the tip pool which, at a minimum, included: (1) a daily log of the tips collected by each employee on each shift, (2) a list of occupations that the employer deems eligible to receive tips through the tip pooling system, (3) the shares of tips that each occupation is scheduled to receive through the tip pool system, and (4) the amount in tips each employee receives from the tip pool, by date. *See* 12 NYCRR § 146-2.17 (a).

79.    To be eligible to receive tips from the tip pool under New York State law, the Hospitality Order states that eligible employees must perform, or assist in performing, personal

service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental. *See* 12 NYCRR § 146-2.14(e).

80.    Moreover, pursuant to NYLL § 196-d, other than proper deduction of a tip credit, employers are prohibited from directly or indirectly demanding, accepting, or retaining any employee gratuities.

81.    Likewise, under the federal regulations enacted pursuant to the FLSA, when an employer takes a tip credit, an employer may require an employee from whom the employer takes a tip credit to contribute tips to a tip pool only if it is limited to employees who "customarily and regularly receive tips". *See* 29 U.S.C. § 203(m) and 29 C.F.R. § 531.54.

82.    Federal law also clearly states that when an employer takes a tip credit pursuant to section 3(m)(2)(A), "[a]n employer may not receive tips from such a tip pool and may not allow managers and supervisors to receive tips from the tip pool." *See* 29 C.F.R. § 531.54.

83.    At all relevant times, the tip pool operated by Defendants at 15 Church violated state and federal law on a daily basis.

84.    Each night the restaurant was open, Defendants required Plaintiff and tipped servers and bartenders to contribute their tips into a pool, which tips were then re-distributed to a group which included other tip ineligible 15 Church staff members such as: (1) the restaurant's front of the house manager, Defendant Pezulich, (2) dishwashers, (3) administrative staff who only answered phones, (4) expeditors who primarily stayed inside the kitchen, and (5) cleaning staff.

85.    These ineligible employees did not perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties.

86.    Defendant Pezulich was not eligible to participate in the tip pool because he was employed as the manager of the restaurant and possessed meaningful authority and control over his subordinates, the servers and bartenders at 15 Church.

87.    In a willful violation of the law, Defendant Pezulich retained gratuities from the tip pool for himself.

88.    Defendants' tip pool policy and practices constitute an unlawful retention of Plaintiffs' and other similarly situated tipped service staff employees' wages under the NYLL and FLSA.

89.    In addition, Defendants unlawfully required Plaintiff and other tipped staff members to remit earned tips back to Defendants in the event of mistakes or cash shortages. *See* 12 NYCRR § 146-2.7 (a).

90.    In one such instance, Defendants, through Defendant Pezulich, required Slaven and all other food service workers to contribute a portion of their tips from the tip pool back to 15 Church after it was discovered a table received a bottle of wine which was more expensive than the bottle of wine that had actually been ordered.

91.    According to Slaven, Defendants also maintained a policy which required tipped staff to pay for any cash shortages out of their tips.

92.    Under the FLSA, an employer may pay an employee an amount below the minimum wage *only* if the employer allows the employee to retain all tips owed to him. Furthermore, under the FLSA, an employer cannot retain any portion of the tips paid to employees who do not earn the minimum wage.  *See* 29 U.S.C. § 203(m).

93.    In addition, Defendants' practices set forth above violated NYLL § 196-d, which prohibits employers from retaining tips received by employees.

94.     Accordingly, Defendants were not able to avail themselves of the tip credit under the NYLL or the FLSA due to unlawful retention of tips.

95.     As a consequence, Defendants paid Plaintiff and all similarly situated 15 Church employees who were subject to the tip credit hourly compensation at rates below the statutory amounts required by law.

96.     As set forth above, Plaintiff worked overtime hours in February 2024 but was compensated below the lawfully required rate for this time.

97.     Defendants are required to reimburse these employees for the hourly tip credit and the amount of all tips which were improperly diverted to tip ineligible employees, plus an equal amount in liquidated damages, as well as statutory interest, costs, and recovery of attorney fees.

Failing to Properly Provide Statutory Notice of Pay Rates and Tip Credits

98.     Under applicable New York law, Defendants were also required to provide each employee with a statement, commonly referred to as a pay stub, with every payment of wages. The pay stub must list hours worked, rates paid, gross wages, credits claimed (for tips, meals and lodging) if any, deductions and net wages. 12 NYCRR § 146-2.3.

99.     Defendants' weekly pay stubs provided to Plaintiff Slaven and other staff members subject to the tip credit did not actually list the tip credit claimed by Defendants and provided an inaccurate statement of the tips which Plaintiff was entitled to.

100.     An example of such non-compliant pay stub is attached herewith. See "Exhibit B."

101.     In addition, under New York Law, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3, Defendants were required to provide their tipped employees with written notice pursuant to 12 NYCRR § 146-2.2 (a) which outlined, *inter alia*, the employee's regular hourly pay rate,

overtime hourly pay rate, and the amount of tip credit, if any, to be taken from the basic minimum hourly rate.

102.     This notice was required to be given to an employee prior to the start of employment and, pursuant to 12 NYCRR § 146-2.2(b), prior to any subsequent change in the employee's hourly rates of pay.

103.     Defendants were also required by 12 NYCRR § 146-2.2 (c) to obtain a signed acknowledgment from each employee and keep such acknowledgment on file for six years.

104.     Likewise, under federal law, an employer is not entitled to take the tip credit unless the employer has provided notice to the employee of the provisions of 29 U.S.C. § 203(m), which includes notice that the employer intends to take a tip credit, notice that pooling of tips is only among employees who customarily and regularly receive tips, and that an employer, including managers and supervisors, are not permitted to keep any portion of the employee's tips.

105.     The burden is on the employer to demonstrate compliance with the FLSA's notice provisions as a condition to taking the tip credit.

106.     According to Plaintiff, she and other tipped staff members were never presented with written notice containing pay rates and tip credits or required to sign any acknowledgments at the time of hiring. Likewise, there were no other communications disclosing the intention to take a tip credit or the other information contained in 29 U.S.C. § 203(m), including the prohibition on sharing tips with ineligible employees who do not customarily and regularly receive tips.

107.     Furthermore, Plaintiff never saw Defendants present such notices to other tipped staff members at 15 Church.

108.     Based on the failure to provide proper notice, Defendants were not entitled to take a tip credit against the basic minimum hourly rate and overtime hourly rate required by applicable

New York law and Plaintiffs were required to be paid at the applicable rates for regular and overtime hours for each year of the relevant period.

109.    Despite their failure to comply with the notice requirements of 12 NYCRR § 146-2.2, Defendants availed themselves of the tip credit with respect to all tipped employees during the applicable time period.

110.    As a result, Defendants violated the NYLL and FLSA by failing to pay Plaintiff and other tipped 15 Church employees who were paid an hourly rate using the tip credit the basic minimum hourly rate and overtime rate required by law.

111.    Finally, whether Plaintiff and similarly situated tipped staff members received tips that would bring their total earnings above the tip credit minimum wage is irrelevant.

112.    The Plaintiff and other tipped staff members part of the NYLL Class were compensated with an unlawful tip credit, did not receive the full minimum and overtime wage which was required, and suffered a concrete monetary harm.

113.    Moreover, the affirmative defenses for the "complete and timely payment of all wages" to claims for violation of NYLL § 195 are unavailable where the employer unlawfully diverts employee tips through a tip pool.

## DEFENDANTS' CONDUCT WAS WILLFUL

114.    Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiff and similarly situated employees.

115.    Defendants knew or recklessly disregarded that improperly forcing the Plaintiff and similarly situated employees to share their tips with ineligible staff members at 15 Church would unlawfully economically injure such employees.  Defendants nevertheless conducted the operation of this illegal scheme to enrich themselves.

116.     Defendants knew or recklessly disregarded, that failing to provide Plaintiff and similarly situated employees with proper notice of applicable rates and the tip credits to be taken would unlawfully economically injure such employees. Defendants nevertheless conducted the operation of this illegal scheme to enrich themselves.

117.     Defendants knew, or recklessly disregarded, that failing to pay minimum and overtime wages to Plaintiff and similarly situated employees would unlawfully economically injure such employees.  Defendants nevertheless conducted the operation of this illegal scheme to enrich themselves.

## FLSA COLLECTIVE ACTION ALLEGATIONS

118.     The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. §216(b) of the FLSA.

119.     Plaintiffs bring the First claim for relief as a collective action pursuant to FLSA Section 29 U.S.C. § 216(b), on behalf of all tipped, hourly front of the house food service workers employed by 15 Church (i.e. all wait staff, bartenders, bussers, runners, and other hourly food service workers)  within three years prior to this lawsuit's filing date through the date of final disposition of this action ("**FLSA PERIOD")** who were paid using the tip credit and had their tips unlawfully appropriated by Defendants to pay ineligible staff members. ("**FLSA COLLECTIVE TIP PLAINTIFFS**").

120.     Plaintiffs bring the Second Claim for Relief on behalf of all tipped, hourly front of the house food service workers employed by 15 Church (i.e. all wait staff, bartenders, bussers, runners, and other hourly service workers) within the FLSA Period and who were subject to Defendants' unlawful compensation practices, including failing to pay employees one and one-half times their regular rate of pay when they worked overtime ("**FLSA COLLECTIVE**

**OVERTIME PLAINTIFFS**", and collectively with the FLSA Collective Tip Plaintiffs, the "FLSA Collective Plaintiffs").

121.    Defendants employed Plaintiff during the FLSA Period.

122.    During the FLSA Period, Defendants employed more than 50 employees, each falling within the FLSA Collective Plaintiffs.

123.    Defendants controlled how much the FLSA Collective Plaintiffs were compensated, maintained records of employment for the FLSA Period, assigned and supervised all tasks given to the FLSA Collective Plaintiffs, and maintained and exercised control as to how the FLSA Collective Plaintiffs were to perform their tasks.

124.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs had substantially similar job requirements and pay.

125.    Defendants willfully retained tips due to FLSA Collective Plaintiffs contrary to law.

126.    Defendants willfully failed to compensate Plaintiff Slaven in the amount one and one-half times her regular rate of pay as required under 9 U.S.C. § 207(a)(1).

127.    The claims of Plaintiff Slaven stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

128.    There are numerous similarly situated current and former employees of Defendants who were subject to the aforementioned conduct in violation of the FLSA who will benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join therein. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## CLASS ACTION ALLEGATIONS

129.     Plaintiffs bring the Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief pursuant to Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P.") on behalf of the following defined class (referred to as the "**NYLL Class**"):

> a.     All tipped, hourly front of the house food service workers employed by 15 Church (wait staff, bartenders, bussers, runners, and other hourly food service workers) within six years prior to this lawsuit's filing date through the date of final disposition of this action ("**NYLL Class Period")**, and who were subject to Defendants' unlawful practices of: (1) distributing tips to ineligible employees from the tip pool and making unlawful deductions from employee compensation; (2) failing to pay the lawful minimum wage and overtime hours and/or (3) failing to provide tipped workers with accurate pay stubs, wage notices and obtaining signed acknowledgments of such notice ("**<u>NYLL Class")</u>**.

130.     New York State law prohibits employers from requiring tipped employees from sharing tips with non-service employees or management. NYLL §196-d.

131.     The NYLL also bars tipping practices and actions that violate the FLSA.

132.     Defendants' practices of requiring Plaintiff and members of the NYLL Class to pay a portion of their tips to ineligible persons and/or the manager were and are in violation of the NYLL.

133.     Moreover, New York law requires Defendants to pay Plaintiffs and similarly situated employees one and one-half times their regular pay where such employees work over 40 hours a week.

134.     The members of the NYLL Class are readily ascertainable.  The number and identity of the NYLL Class is determinable from the records of Defendants.  The hours assigned and worked, the positions held, and the rates of pay for each NYLL Class member are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under F.R.C.P. 23.

135.    The proposed NYLL Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than fifty (50) members of the NYLL Class.

136.    Plaintiff is able to fairly and adequately protect the interests of the NYLL Class and has no interests legitimately antagonistic to the NYLL Class.

137.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

138.    Plaintiff's claims are typical of those claims which could be alleged by any member of the NYLL Class, and the relief sought is typical of the relief which would be sought by each member of the NYLL Class in separate actions.  Each member of the NYLL Class was subject to the same company policies and practices of the Defendants regarding the unlawful retention of tips as alleged herein.  Defendants' company-wide policies and practices affected all NYLL Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiffs and other NYLL Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures. Plaintiffs had the same or similar duties as other NYLL Class members.

139.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy- particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of efforts and expense that numerous individual actions engender.

140.    Because the losses, injuries, and damages suffered by each of the individual Class members are small, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual NYLL Class members to redress the wrongs done to them.

141.    On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the NYLL Class would create a risk of inconsistent and/or varying adjudications with respect to individual members of the NYLL Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of NYLL Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

142.    Defendants and other employers throughout the state violate the NYLL. Current employees are often too afraid to assert their rights out of fear of direct and indirect retaliation. Former employees may be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

143.    There are questions of law and fact common to the NYLL Class which predominate over any questions affecting only individual class members, including:

a.  Whether Defendants employed Plaintiff and the NYLL Class within the meaning of the NYLL;

b.  Whether Defendants provided tipped employees with the proper statutory notice and retained the proper signed acknowledgments required to take advantage of the tip credit;

c.  Whether Defendants paid Plaintiff and the NYLL Class at the proper minimum wage rate for all hours worked;

d.  Whether Defendants paid Plaintiff and the NYLL Class proper overtime wages;

e.  At what common rate, or rates subject to common methods of calculation, were Defendants required to pay the NYLL Class members for their work;

f.  Whether Defendants have a policy of retaining a portion of Plaintiff's tips and the NYLL Class members' tips and whether such policy violates the NYLL;

g.  Whether Defendants misappropriated Plaintiffs' tips and the NYLL Class's tips and distributed a portion of those tips to ineligible employees in violation of the NYLL;

h.  What the proper measures of damages sustained by the NYLL Class is; and

i.  Whether Defendants' conduct was "willful."

144.    The case is maintainable as a class action under F.R.C.P. 23(b)(1) because prosecution of actions by or against individual members of the NYLL Class would yield inconsistent or varying adjudications and create risks of incompatible standards of conduct for

Defendants. Further, adjudication of each individual NYLL Class members' claim as a separate action would be dispositive of the interest of other individuals not part to this action, thus impeding their ability to adequately protect their interests.

145.     Class certification is also appropriate under F.R.C.P. 23(b)(3) because questions of law and fact common to the NYLL Class predominate over any questions affecting only individual members, and because a class action is superior to other available methods that can fairly and efficiently adjudicate this lawsuit.  Defendants' common and uniform policies and practices denied the NYLL Class members the wages to which they are entitled. Members' damages are small compared to the expense and burden of individually prosecuting this lawsuit. Moreover, class certification is superior because it obviates the need for unduly duplicative litigation that might result in inconsistent judgments regarding Defendants' practices and conduct.

146.     Plaintiff intends, to the extent required by Rule 23, to provide notice to all members of the NYLL Class. The NYLL Class members' names and addresses are available from Defendants.

## FIRST CLAIM
FLSA Minimum Wage Violation and FLSA Tip Misappropriation
29 U.S.C. §§ 201, *et seq*. and 29 U.S.C. § 203(m)(2)

147.     Plaintiff Slaven, on behalf of herself and the FLSA Collective Tip Plaintiffs, re-allege and reincorporate by reference all preceding paragraphs herein.

148.     Each Defendant is an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed "employees", including Plaintiff and the FLSA Collective Plaintiffs.

149.    Pursuant to applicable law, Defendants were required to pay Plaintiffs and other FLSA Collective Tip Plaintiffs the applicable minimum wage rate for all hours worked.

150.    Defendants were not eligible to avail themselves of the tipped minimum wage rate under the FLSA, 29 U.S.C. § 203(m), and supporting federal regulations, including but not limited to 29 C.F.R. § 531.50 *et seq*., because Defendants did not permit Plaintiff and other members of the FLSA Collective Tip Plaintiffs to retain all tips that they received.

151.    Throughout the applicable period, Defendants willfully retained Plaintiff Slaven and FLSA Collective Tip Plaintiffs' tips and failed to pay Plaintiff Slaven and FLSA Collective Tip Plaintiffs the applicable minimum wage for each hour worked.

152.    Plaintiff and the FLSA Collective Tip Plaintiffs were deprived of lawfully earned tips, underpaid hourly wages, and were injured by the Defendants' conduct.

153.    Plaintiff Slaven seeks damages in the amount of her and the FLSA Collective Tip Plaintiffs' respective unpaid compensation, including reimbursement for diverted tips and unlawful tip credits for all hours worked in which Defendants utilized the tip credit, liquidated (double) damages provided under the FLSA for such violations, pre- and post-judgment interest at the maximum statutory rates, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM
FLSA Overtime Claim
29 USC § 207(a)(1)

154.    Plaintiff Slaven, on behalf of herself and the FLSA Collective Overtime Plaintiffs, re-alleges and reincorporates by reference all preceding paragraphs herein.

155.    Each Defendant is an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.  At all

relevant times, Defendants have employed "employees" within the meaning of the FLSA, including Plaintiff and the FLSA Collective Plaintiffs.

156.    Pursuant to applicable law, Defendants were required to pay Plaintiff Slaven and other members of the FLSA Collective Overtime Plaintiffs the applicable overtime rate for all hours worked.

157.    Specifically, Defendants failed to pay Plaintiff Slaven and other members of the FLSA Collective Overtime Plaintiffs one and one-half times their regular rate of pay where they worked over 40 hours a week.

158.    In one week in early February 2024, Plaintiff Slaven worked in excess of 40 hours without being properly compensated. Slaven worked 9 days in a row during this stretch, arriving at 3 pm each day and concluding each shift at approximately 10 pm or 11 pm each night.

159.    For these overtime hours, Slaven was compensated using an overtime rate of $15.00 per hour, not the lawfully applicable rate of $22.50 per hour for 2024.

160.    In 2024, the minimum wage in effect for food service workers outside of New York City and its surrounding counties was $15.00. Provided conditions were met, an employer of a food service worker in these areas was permitted to utilize a $5.00 tip credit and pay the employee a $10.00/hour cash wage. The proper way to calculate overtime is to use the employee's regular rate of pay, before subtracting any tip credit, multiplied by 1.5, which is then reduced by the tip credit.

161.    As a result, even if Defendants were permitted to use the tip credit, the amount paid to Plaintiff and other tipped staff members for overtime in 2024, $15.00/hour, was improperly calculated and violated the law.

162.     The proper overtime calculation required to pay Plaintiff and other tipped staff would have been the regular rate of pay before use of the tip credit, i.e. $15.00/hour, multiplied by 1.5, which equals $22.50/hour. The tip credit of $5.00 would then be utilized to reduce the overtime rate to the correct amount applicable for 2024, i.e. $17.50/hour.

163.     As the Defendants misappropriated tips and failed to provide proper notice, they were not permitted to utilize the tip credit with respect to overtime compensation and should have paid tipped food service worker employees who worked in excess of 40 hours in any week $22.50/hour.

164.     Throughout the applicable period, Defendants willfully failed to pay Plaintiff Slaven and other members of the FLSA Collective Overtime Plaintiffs the correct applicable wage for each hour worked, unlawfully retained and distributed Plaintiff Slaven's and FLSA Collective Tip Plaintiffs' tips to ineligible persons, and failed to provide proper statutory wage notices.

165.     Slaven seeks damages in the amount of her and other members of the FLSA Collective Tip Plaintiffs' respective unpaid overtime compensation, liquidated (double) damages provided under the FLSA for such violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM
New York Illegal Deductions from Gratuities
NYLL § 196-d

166.     Plaintiff Slaven, on behalf of herself and members of the NYLL Class, re-alleges and reincorporates by reference all preceding paragraphs herein.

167.     As set forth above, Defendants enforced a company policy which unlawfully retained and re-distributed portions of Plaintiff Slaven and the NYLL Class's tips by distributing

portions of a daily tip pool to Defendant Pezulich and other tip ineligible staff members like dishwashers, cleaning staff, expeditors, and administrative staff.

168.    Pursuant to company policy, Defendants also made improper deductions from Plaintiff's and the NYLL Class' tips for mistakes and cash shortages.

169.    Plaintiff Slavin and the NYLL Class were employed by Defendants at all relevant times.

170.    Defendants unlawfully distributed tips earned by Plaintiffs and the NYLL Class members to tip ineligible parties, including Defendants themselves.

171.    As a result of Defendants' willful violations of the NYLL, Plaintiff Slaven and the NYLL Class members are entitled to recover their respective unpaid compensation allowed by law (including unpaid tips and refund of tip credits), liquidated damages as provided for by NYLL Article 6, § 198, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CLAIM
Violation of New York State Minimum Wage Act
NYLL §§650 et seq.

172.    Plaintiff Slaven, on behalf of herself and NYLL Class members, re-alleges and reincorporates by reference all preceding paragraphs herein.

173.    Pursuant to applicable law, Defendants were required to pay Plaintiff and the NYLL Class the then applicable minimum wage for each year they were employed at 15 Church.

174.    However, under the NYLL and the FLSA, employers are not lawfully permitted to take a tip credit if the company enforces a policy which does not permit tipped employees from retaining the full amount of all tips received.

175.    As a result, Defendants willfully failed to pay Plaintiff Slaven and members of the NYLL Class the basic minimum hourly rate for all hours in violation of NYLL.

176.    Plaintiff Slaven and the NYLL Class have been injured by Defendants' conduct and are entitled to recovery of unpaid compensation, liquidated and/or statutory damages, costs, statutory pre- and post-judgment interest, and attorney fees stemming from these violations.

**FIFTH CLAIM**
New York Failure to Pay Overtime
12 NYCRR 146-1.4

177.    Plaintiff Slaven, on behalf of herself and the NYLL Class, re-alleges and reincorporates by reference all preceding paragraphs herein.

178.    Pursuant to applicable law, Defendants were required to pay Plaintiff and other members of the NYLL Class one and one-half times the basic minimum hourly rate when Plaintiff and the NYLL Class worked over 40 hours a week.

179.    As detailed above, at times, Plaintiff Slaven worked in excess of 40 hours in a week, including one stretch in which she worked 9 days in a row in February 2024.

180.    As set out above, Plaintiff Slaven was paid at the rate of $15/hour for her overtime work, an underpayment of $7.50/hour. Slaven was entitled to be paid $22.50/hour for all overtime hours under New York law.

181.    Under New York law, "[i]t is a violation of the overtime requirement for an employer to subtract the tip credit first and then multiply the reduced rate by one and one half." See 12 N.Y.C.R.R. § 146-1.4.

182.    Despite the clear mandates of New York law, Defendants compensated Plaintiff and other tipped staff members for overtime hours at a rate of $15.00, which is the total amount

calculated if you subtract the tip credit from the regular rate first and then multiply the reduced rate by one and one half, i.e. the unlawful calculation method prohibited by New York law.

183.     As Defendants were not entitled to take the tip credit, the overtime rate should have been calculated using the regular minimum rate in effect for 2024, i.e. $15.00/hour, multiplied by one and one half, which produces an overtime rate of $22.50/hour.

184.     Throughout the applicable period, Defendants willfully failed to pay Plaintiff Slaven and NYLL Class the applicable overtime rate for each hour worked in excess of 40 hours a week.

185.     Plaintiff and the NYLL Class's members are entitled to recover their respective unpaid compensation (including without limitation unpaid overtime wages), liquidated damages as provided for by NYLL Article 6, § 198, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### SIXTH CLAIM FOR RELIEF
New York Failure to Provide Wage Notice Requirements
NYLL §§ 195(1)(a), 198

186.     Plaintiff, on behalf of herself and the NYLL Class, re-alleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

187.     Pursuant to applicable New York law, at the time of hiring, the Defendants were required to provide timely notice, in English and in the primary language of each employee, to all tipped employees of, *inter alia*, the employee's regular hourly pay rate, overtime hourly pay rate, and the amount of tip credit, if any, to be taken from the basic minimum hourly rate. This notice was required to be provided both at the time of hiring and prior to any changes in compensation.

188.     Applicable New York law also required the Defendants to obtain signed acknowledgments of this notice from each tipped employee to be kept on file for six years.

189.     Defendants failed to provide such notice at the time of hiring of Plaintiff and other tipped staff members of 15 Church, failed to provide such notice prior to any pay increases, and failed to obtain signed acknowledgments from Plaintiff and each of their tipped employees but, nevertheless, availed themselves of the benefit of the tip credit.

190.     Plaintiff and other tipped staff members at 15 Church were injured by Defendants' failure to provide wage notices which met the statutory criteria. If Plaintiff and the NYLL Class had been properly notified of the tip credit being taken against their cash wages or their entitlement to a higher regular or overtime rate of pay, they would have disputed the amounts being paid to them, demanded to be paid at the higher rates, or at a minimum, requested that no tips be distributed to ineligible 15 Church staff members. As a result, Plaintiff and the NYLL Class were underpaid wages of Defendants' failure to provide proper wages notices.

191.     As a result of Defendants' unlawful conduct, Plaintiff and all members of the NYLL Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs, and attorney's fees, as provided by NYLL § 663.

**SEVENTH CLAIM FOR RELIEF**
New York Failure to Provide Wage Statement Claims
NYLL §§ 195 (3), 198

192.     Plaintiff, on behalf of herself and the NYLL Class, re-alleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

193.     NYLL 195 (3) requires that employers, with every payment of wages, provide employees with a statement which includes certain information, including, but not limited to, "the dates of work covered by that payment of wages … rate or rates of pay and basis thereof … deductions; allowances, if any, claimed as part of the minimum wage…".

194.    Defendants failed to provide the proper information in the weekly wage statements issued to Plaintiff and other tipped staff members on pay day. To wit, Plaintiff and other tipped staff were not provided notice of the tip credit being taken against the statutorily required amounts of regular and overtime rates of pay. Moreover, Plaintiff and other tipped staff were not provided with the accurate rates of pay for both regular and overtime hours and the pay statements did not contain accurate disclosures of Plaintiff's tips.

195.    Plaintiff and other tipped staff members at 15 Church were injured by the Defendants' failure to provide wage statements which met the statutory criteria. If Defendants had properly provided notice to Plaintiff and other tipped staff members which contained accurate rates of pay, Plaintiffs would have noticed that they were being underpaid for their hourly wages and demanded to be paid at the applicable regular and overtime rates.

196.    As a result of Defendants' unlawful conduct, Plaintiff and members of the NYLL Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs, and attorney's fees, as provided by NYLL § 663.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for a judgment against the Defendants awarding the following relief:

a)  That the Court determine that this lawsuit may proceed as an FLSA collective action

b)  That the Court determine that this lawsuit may proceed as a class action under F.R.C.P. 23(b)(1) and (3);

c)  That Defendants have violated applicable provisions of the FLSA as to Plaintiffs and the FLSA Collective Plaintiffs;

d)  That Defendants have violated applicable provisions of the NYLL as to Plaintiff and the

    NYLL Class;

e)  That Defendants' violations as described above are found to have been willful;

f)  An award of unpaid wages owed, including interest thereon;

g)  Penalties, including liquidated damages, subject to proof at trial;

h)  Reasonable attorneys' fees and costs, including fees pursuant to 29 U.S.C. § 216, N.Y.

    Lab. L. § 663 and/or other applicable law;

i)  Pre-judgment and post-judgment interest; and

j)  Such other and further relief, in law or equity as this Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 14, 2025
     New York, NY

        Law Office of Ananda N. Chaudhuri

        _____
        Ananda Chaudhuri, Esq. (*Bar No. 5362049*)
        Law Office of Ananda Chaudhuri
        57 West 57th St., Fourth Fl.
        New York, NY 10019
        Phone: 212-457-1288
        Email: ananda@ac-pllc.com

        **Law Office of Joseph T. Moen**

        _____
        Joseph T. Moen, Esq. (*Pro Hac Motion to be Submitted*)

Law Office of Joseph T. Moen
63 Putnam Street, Suite 202
Saratoga Springs, NY 12866
Tel: 518-588-0316
Fax: 617-607-7587
Email: joe@jtmoenlaw.com

*Counsel for the Plaintiff and Putative Class & Collective*